Good morning, Your Honor, and may it please the Court, Keith Donohue for Appellant Gregory Stevens. I'd like to reserve three minutes of my time.  Your Honor, the principal issue on this appeal concerns an enhancement in the sentencing that applies if an unlawfully possessed gun was used in a more serious but uncharged offense. In this case, my client pleaded guilty to robbing a pharmacy and unlawfully carrying a gun that went off when, during the robbery, an employee tackled him. Now, you have never conceded that this was anything other than a gun discharging during the course of the tussle, is that right? Correct. Well, let me lead up to the question I was going to ask. 2A.2.1 is what we're dealing with, right? Yes. And the question then becomes, is there what, are you saying premeditation and intent needed? And the claim is that premeditation was not found. Correct. And could not be found. In fact, the thrust of your argument is that premeditation was not either demonstrated or found specifically. So, it looks like the court went off on felony murder, you think? That's the best interpretation I can put forward. There's some indication also that it thought any intentional act would do. In fact, intentionality, that it was an intentional shooting, was the first finding of fact that the district court made, wasn't it? He made it right before he declared a recess. Well, he came back from a recess and declared it, but I would say it was the first and only I think he may have made it prior to the recess, but in any event, I believe it was the first determination that he made. First and only, I would submit. Yes, Your Honor. This intentional shooting, as the Supreme Court pointed out in Braxton, is distinct from an intent to kill, and that was much of the thrust of the argument at sentencing. The government at sentencing did not itself even contend that the record here could show premeditation. The undisputed facts came from the testimony of a man named Ahmed Nawaz, who was staffing the counter in the pharmacy. He said that my client came in, confronted him with a gun, and threatened to shoot him. He said more than that. I mean, you say he came in, but he actually, as he came in, the first thing he did, essentially, or it seems the first thing he said was, had to do with, you know, give me drugs or I'll shoot. So you have a sequence of events that begins with him making a threat immediately upon his arrival, doesn't he? Yes, that's correct, Your Honor. You've indicated that the thrust of your position is the mer element of premeditation, the first degree mer element of premeditation, which occurs in the first portion of subsection A, prior to the disjunctive. But, as you well know, the record also reflects, as I alluded to before, Judge Goldberg took a recess, and then he came back in. He took the recess, he said, I believe, to look at the case law. And when he came back, having looked at the case law, he refers specifically to Murillo. And he not only refers to it, having looked at it, he reads a portion of the opinion that says, if the district court had found premeditation, the base offense level would have been 33, because the object of the offense would have constituted first degree murder. Now, Murillo was not a felony murder case, right? And to the extent he found it helpful or not helpful, he specifically reads a portion that reveals his knowledge of the existence of premeditation. Do you really think, on this record, that an experienced judge who also was a prosecutor would not have known that premeditation was an element here? And that, therefore, this is something from which we can infer, at least, a finding? No, that inference isn't a permissible one from the record here. The court's reading from Murillo has to be viewed in the context of the argument that it was responding to. And the particular footnote that the court read into the record does use the word premeditation. But it also addresses the phrase, object of the offense, as used in Guideline 282.1. Object of what offense? This is what the court was responding to. The defense counsel had argued that means robbery. The object of the offense is robbery, and I have not renewed that position on appeal. Murillo indicates in the footnote... By the way, just as an aside, I appreciate your correct pronunciation, which I did not make. And Murillo, Judge Sirica, would be very proud of the fact that you pronounced it correctly, and ashamed of me. I'm not sure which the reading is. But Murillo addresses this guideline's phrase, object of the offense, in that same footnote. So it was, I submit, Your Honor, happenstance that in reading that footnote, the judge also continued reading through premeditation, because an alternative route to first-degree murder, when someone dies, is a felony murder theory. So that's what the district court was looking at. If you look at page 145 of the appendix, you can see the court really zeroing in on the enumeration of robbery as a felony that will support a felony murder. I will be asking the government about that, because we have an unfolding of events here, relative to the preparation of two PSRs, and as well as an intention at one point on the part of your client to plead, and then he backs out of it, and then he pleads, ultimately, but without an agreement. It would be curious to me to hear just how the government intended to proceed here, because you don't get to the date of trial without knowing your theory, whether it was felony murder, or whether it was another form of first-degree murder. I realize that doesn't impact on the findings made by the district judge, but, again, the rather unusual set of procedural and historical facts in this case does cause one to wonder. Right, and at an earlier juncture, the government had offered a plea deal of 20 years for a guilty plea, and, of course, Mr. Stephens did plead guilty, but in the interim, this superseding indictment brought, ultimately, this cross-reference into play. Is it your view, Mr. Donohue, that a finding of premeditation was required? Yes, a finding of premeditation. Where in the cross-reference is that supported? What does the cross-reference say about premeditation? The 282.1, the attempted murder guideline, says, fix the offense level at 33 if the object of the offense was first-degree murder. The commentary says first-degree murder means the offense described in Section 1111 of Title 18, which matches the generic definition of first-degree murder. And one theory of first-degree murder, and the only one that was available to the government here, was that of a premeditated and deliberate killing, meaning a killing not only with specific intent to kill the victim, but— Why was that the only one available to the government? Because the government—the other ones would be felony murder theory, which we submit applies only when death results from a person's actions. So it is a legal issue before this court whether felony murder can support a conviction for attempted murder. And I would say— All right, and the district judge obviously knew this was not felony murder. No, I don't—well, he knew there was no death, correct? Right, so it's obvious it's not felony murder. So it's got to be—the judge made a finding of attempted first-degree murder consistent with the cross-reference, correct? Correct. Okay. And that finding would necessarily require implicit—let's put it this way— implicit in that finding would be a finding of premeditation, would it not? No, Your Honor. That might be the case. What else would support it? If it wasn't—what are the other ways of committing—what are the other ways for that finding to be supported other than premeditation? That would be the only way. And we know felony murder is off the table because we don't have a— No, no, no, felony murder is— We don't have a dead body, so it can't be felony murder. But that precept was articulated by my colleague below, and I've articulated it here, but the government has— could never have been the theory, which is why I was referencing events prior to the entry of the plea and prior to sentencing. Felony murder never could have been in the picture, could it? Because you don't have a dead body. I have to say, it feels like I'm doing very well on the law here because the panel appears to be without doubt of that point. But the government took the opposite position below. All right. But are you arguing that the government waived or forfeited the argument that there was a first-degree murder finding because of premeditation? No, I'm not arguing waiver. I'm arguing that the record has to be viewed in context of what arguments were before the district court. Why? Why? Why couldn't the district court make a finding of attempted first-degree murder with an implicit conclusion in the judge's mind that premeditation was supported by the record? And why can't we look at the record and look at the tussle and likewise conclude that there was premeditation? Well, the judge did not implicitly or explicitly conclude there was premeditation. And when you do look at the record— How do you know the judge didn't implicitly conclude premeditation? We all agree there was no explicit finding. I think we all agree there was no explicit finding of premeditation. But when I look at the record and I see an explicit finding that the cross-reference applies for attempted first-degree murder and I know there's no dead body, that leads me rather ineluctably to the conclusion that an implicit finding was premeditation. So I don't understand how you can so quickly dismiss the notion that there was an implicit finding of premeditation. But let me parse the distinction between premeditation and specific intent to kill. Now, the district court meticulously, consistently, always stated its finding to be there was an intentional shooting. It never said anything more than that. Could you infer from that an implicit finding of intent to kill? Perhaps, yes. I think it's not clear from the record here, so I think there would need to be a remand on that point. But specific intent to kill is not premeditation. Or to be more precise, it's not premeditation and deliberation as required for first-degree murder. Judge Maris, in his Venerable Lake opinion, explained that premeditation is to conceive the plan to kill. And for there to be a deliberate killing, that is a first-degree murder, there must be reflection upon that plan. Let me make sure I understand that argument. It's interesting, so let's make sure I understand it. You're saying that because the judge adverted to specific intent to kill, we should take it that that was the only thing supporting his finding that the cross-reference applies. Is that your argument? Because he only referred to an intentional shooting. He didn't even ever voice the phrase intent to kill. Defense counsel urged that was necessary, but it's not clear to me that the district court really apprehended this aspect. So the district court made a mistake of law by saying, I find intent to kill, and intent to kill satisfies the cross-reference, and your rejoinder is no, you need more than intent to kill, you need premeditation. Yes. Let me take you back to Lake, which you quoted very selectively, because the opinion also referred to that premeditation being capable of formation within a brief moment. That's true, Your Honor, but I would suggest a brief moment. It's a very interesting formulation to say a brief moment as distinct from a moment, because a brief moment is perhaps a short moment, but it's at least measurable. Or if you take the Supreme Court's formulation in Fisher, it's an appreciable lapse of time. And that's what the record here demonstrates. There was not, the victim could not have been clearer that everything happened in the blink of an eye. And if any of these formulations that are used to distinguish what makes first, what was observable to Mr. Nawaz at the time of the shooting may have been a blink of an eye. The chronology of events here from the point of entry of your client into the pharmacy, through the encounter with Mr. Nawaz, through the attempt to find drugs, through the tackle, through the tussle, that didn't happen in the brief moment or within the moment or whatever subsection of a moment may be. We're getting into the metaphysical, I'm afraid. Right, well, if you look at the sequence of facts, which Your Honor has correctly stated, but I want to bring your attention to what I would suggest is an intervening point in this sequence. Because as Mr. Nawaz testified, as he was pausing, because he wasn't sure he could find drugs, after Mr. Stephens had threatened to shoot him, rather than shoot him, Mr. Stephens put the gun in his pocket and began grabbing drugs himself. So as of this point in the encounter, every fact is that Mr. Stephens' intent, including his intent when he voiced the threat, is to rob the pharmacy. Then he gets tackled and then he shoots. The intent to kill, I mean, that's not exclusive. It's not required that he didn't intend to kill him on the back end because he was willing to refrain from killing him on the front end, right? I mean, things change. This was a dynamic situation, wasn't it? Yes, and things do change. But the question is, what was his intent at the moment? And as the district court found, he intentionally pulled the trigger. And according to the testimony, that was a spontaneous reaction of being tackled. You know, we, of course— Well, according—yeah, that's Stephens' view of the case. No, no, no, that's Nawaz's, Mr. Nawaz's view of the case. It all happened so quickly— Well, didn't Nawaz testify that Stephens threatened to shoot him? Yes, and what I've— Okay, so he threatens to shoot him, and then there's a tussle, and Stephens pulls the handgun out of his pocket, aims it at Nawaz, and shoots him in the vital parts, in vital organs, right? And you're saying it's clear error for the judge to conclude that from that set of facts there was an intent to murder Nawaz. No, no, I wouldn't conclude—it would be clear to conclude an intent to kill. That would make this a second-degree murder because there would be no premeditated— You're saying he did it—you're conceding that Stephens may have intended to kill Nawaz, but it wasn't premeditated. Yes. Because it's got to be second-degree, not first-degree. Can I just ask a dumb question on standard of review? You had said that the standard of review is de novo because it's an interpretation of the guidelines. The government says that it's clear error because there was a finding of fact. Which is it? It seems that the principal point of dispute is on clear error review, which would be—let me clarify that. The standard would be clear error were there a finding before this court to which it might defer, but there was no finding of premeditation, so— Okay, and then the law—I think maybe we can all agree on the law and then just figure out how the facts fit in then. I understand premeditated—clearly Murillo and other cases generically also state the generic test. First-degree murder requires premeditation and intent. And Murillo, our NPO, in the case of page 195, says that. So I'm guessing that that's—there's a determination of a plan to kill. There is an act indicating he clung to that plan, and there is a sufficient lapse of time between the determination and the act. Is that correct? Are you—as a matter of law, is that— As a matter of law. Yes. And here the court says clearly he had this specific intent at some point to pull the trigger. The question then becomes, when did he determine to plan to kill? Now, normally one might think that on his way in he's saying, I'm just—I'm going to do whatever it takes and I'm going to kill him, but you need—that would be the premeditation part. You need some kind of finding of that. And then the question becomes, when you look at page 181 of the appendix, the court does refer to Murillo offhandedly, implicitly, and then later on says that's intent. Now, either the court was thinking it's only intent and—or intent subsumes the premeditation or what. Well, I mean, Your Honor, I mean, candidly, the district court's findings are not clearly stated. All right? And I can't read its mind, but it never said anything to the effect of premeditation. It depends on how thinly you slice the finding. There is a clear finding of attempted first-degree murder, and you're arguing that's not enough because he needs to make a sub-finding that there was premeditation, right? That's half my argument, Your Honor. The other half is that on this record, the finding of attempted first-degree murder either rested on a theory of some kind of felony murder theory, even though I agree it shouldn't have. No, but we know that's not the case. I guess what I'm challenging you on, Mr. Donahue, is why isn't our evaluation to look at the bundle of facts presented by the case and ask the question, did the district court clearly err when it found that that bundle of facts constituted an attempted first-degree murder? Isn't that our task here? Or is our task to look at the bundle of facts and ask whether the district court made a finding of premeditation? That's a different inquiry. If we have to make the latter, if the latter is the appropriate inquiry, I think you're going to win because I don't see a finding of premeditation here. But the reason I asked you the question at the beginning about what the cross-reference requires is, I don't see the cross-reference requiring a finding of premeditation. I see the cross-reference requiring a finding of attempted first-degree murder, and the district judge specifically found that. Yes, Your Honor, but the entire sentencing proceeding, the assistant United States attorney had been arguing, please apply the felony murder theory. We seem to be in agreement that was a mistake of law. That was the only argument the government made below. The government did not argue there was premeditation. For that matter, defense counsel didn't use the word premeditation because the government's not putting it forward. And certainly the court didn't use the word premeditation. So on this record, the attempted first-degree murder is either based on an incorrect application of the felony murder doctrine, or perhaps, and what I'm allowing is perhaps the judge did find an intent to kill. So he didn't use those exact words. But assuming he found an intent to kill, that would mean the cross-reference applies for second-degree murder. Because there was no basis to infer there was also premeditation. No one had argued premeditation. The government had encouraged the court not even to consider intent. The government said, don't worry about intent. Just apply the felony murder theory, but we'll put on this witness just to tell you what happened. So in that context, even were this court inclined, of course the district court knows the law of first-degree murder. What the record here shows is that the court was not thinking of the definition of first-degree murder that requires premeditation. It was either thinking of felony murder, or it was mistaken to think that a specific intent to kill equaled premeditation, which coincidentally, you know, there are Pennsylvania State cases that come very close to equating those two. And as Judge Smith mentioned, this judge was a state prosecutor. Pennsylvania State cases would be prosecuted differently, however, because felony murder is second-degree murder under the Pennsylvania statute. It's separated in a way that 1111 is not. But there's kind of a, I cite a law review article in my opening brief that is an interesting history of the Pennsylvania statute. And it caused a kind of cheeky line. I hope you don't think I remember back that far. I know your honor wasn't a Pennsylvania State judge. You know, a kind of cheeky line the author writes that as soon as this requirement of premeditation was enacted, the judges promptly began dismantling it. His point being that judges tended to merge specific intent to kill and lose the additional requirement of reflection upon that intent. But that's. You mean pre-reflection? Yes, premeditation and deliberation. Just one clarification, Mr. Donahue, and I mention this only for the emphasis that I wanted to make. Indeed, the court's finding, I think the first time the court found intentionality, that the government has proven the shooting was intentional, appears on page 177 of the appendix. That was before the declaration of the recess, which is shown on page 182, I believe. And the only reason I wanted to make that point is that it suggests reflection on the part of the district judge and reflection during which he read Murillo again and came back and referred to it. Yes, but I do believe if you read about that portion right before the recess, and particularly the argument of counsel, you'll see that the defense counsel is stressing, even if my client had the specific intent to kill. I understand your point. So you refer to the object of the offense. I just wanted to make sure, because you corrected me, and in fact the sequence was as I had suggested. I apologize for that, Your Honor. Well, you had a 50-50 chance on that, right? My chances are usually a lot less than that. Thank you, Mr. Donohue. You reserve time for a rebuttal. We'll hear you then. Mr. Miller? May it please the Court, Michael Miller for the United States of America. Your Honor, the district court did find premeditation. Before you get to that, would you please clarify for me what happened here? Because while it may ultimately have nothing to do with the calculations under the guidelines that were made, I found this a rather unusual situation. I did spend enough years on the district court and dealt with pre-sentence reports frequently. And I'm genuinely confused and was confused as I read through some of this. First of all, did the government ever intend to take this case to trial on anything even resembling a felony murder theory because you had no murder? So, Your Honor, the answer to that is that count one was the robbery. I understand. Count two is the discharge of the firearm. Three. And all we would have to prove for the discharge of the firearm is that it went off. Even if it went off accidentally, that would be enough. Okay, so felony murder only, obviously, only comes into the district court. Somebody has to die, right? Yeah, but let's hope it's none of us. I'm not talking to you. I'm talking to them.  Right, right. Well, hopefully it's nobody. But in any event, what I'm trying to get to here, obviously this all arises at sentencing. But the sentencing process here is what confused me because there is an initial PSR, right? And even the language used, that is the terms of art that were invoked back and forth, were not as precise as I'm accustomed to being. Like base offense level and adjusted offense level and the total offense level. So in emails, there's just kind of an indication of offense level without it being clear to me. So we have confusion throughout this period of time as to just what the base offense level is going to be. Am I correct? So part of the problem in the case... Well, first, was there some confusion at least on somebody's part or as between the parties as to what it should be? So the government had to file... The government objected to the initial PSR. Yes. And we actually had to file our sentencing memo before the PSR was even received, before the final PSR was received, because it just hadn't come through. And I can't remember the exact timeline, but I say on the record I know to Judge Goldberg, Your Honor, I am objecting that I had to file the sentencing memo and ask for base offense level 33 before I got the PSR. But now that I see what the PSR is after... Now that I see what it is, I am formally objecting on the record. So... When do you first bring the cross-reference into the picture? I think probably in the sentencing memo that was filed before the final PSR was submitted. Okay, so it's not in the picture up until that time. I believe that's correct, Your Honor, yes. And to be candid with Your Honor, because I know you wanted the background of this, the fault for this lies with me, not with Judge Goldberg, because I did go in there, while not conceding premeditation, thinking that felony murder would be the easier path, and Judge Goldberg clearly did not want to go down that path. And so we put the witness on. I do believe that the witness did give evidence. Is the record clear that Judge Goldberg didn't want to go down that path? Or even if it's clear in that respect, is it clear as to his belief concerning what path the government wanted to go down? Your Honor, I believe that at the sentencing, I articulated that he could make a finding that, or he could conclude the base offense level was 33 either way, either under the felony murder route or under the route of, the typical route. Does it make any difference? In terms of the ultimate sentencing range, does it make any difference? Our position at sentencing, and even today, is that it does not. But Judge Goldberg, what he did after hearing Mr. Nawaz testify, was he, as Your Honor noted, went into chambers, read over the cases, came back out, and quoted Murillo. And when he quoted it, he didn't have to say the part of Murillo that discussed premeditation. He didn't have to put that in his statement at all as to why he was finding the base offense level was 33. But he did. He specifically noted the Murillo decision that said, quote, if the district court had found premeditation, the base offense level would have been 33. So, and in the government's view, that is a sufficient finding on the part of Judge Goldberg, particularly in the context of an oral sentencing where you don't have time to write down. It's not expressed by the judge as a finding, is it? I mean, we have to infer, to some extent, that he made it as a finding. It could have been more explicit, Your Honor. But as you have noted, he clearly was not making the finding based on the felony murder theory. And so the only way you can get to 33 is through premeditation. And he discussed a Third Circuit unpublished case and specifically quoted the part of that case discussing premeditation. So because he didn't ever go down the felony murder route and he found 33, I think we can reasonably infer that that's what he meant. Isn't it you went in to this hearing on your basic premise was felony murder, was it not?  Attempted felony murder. What's that? It had to be attempted felony murder. The murder didn't take place. Yes, Your Honor. And you're saying the court wasn't buying that. And, in fact, on page 149 of the appendix, you said, look, I cite Murillo. It doesn't deal with a felony murder, but it's the only thing we got. I did say that, Your Honor. And so felony murder is off the table. And so, therefore, you need premeditation, some type of planning. You need an act in furtherance of that and some elapse of time between the determination and the act. Is that correct? Yes, Your Honor. And you're saying that the judge made that finding here. Yes, Your Honor. And where is that in the record other than he refers obliquely to Murillo on appendix 181? Where does he really say, I make a finding of premeditation? I think the fact that he refers to Murillo and quotes Murillo with premeditation, and then says logic dictates that the offense level has to be 33, and then after that specifically notes that the shooting was to the victim's chest, where his vital organs are concentrated, which is in itself evidence of premeditation. That's not a finding of premeditation. It's evidence of premeditation. But it's not a finding. The only finding was attempted first-degree murder. Yes, but as Your Honor noted, if felony murder is off the table, premeditation is required. And is that a finding or a conclusion? It's a dumb question. Attempted first-degree murder. I believe that he made the finding. Can that be a finding? I think that premeditation can be a finding. In other words, it's a component. Findings are a component of a conclusion, are they not? I'm just thinking back to my college days. I believe that's correct, Your Honor. Okay. What he actually found on the bottom of 181, 182, since I find that the shooting was intentional and the elements of murder, attempted murder necessarily includes intentional conduct. I think logic dictates it would be 33 because the object of the offense would have constituted first-degree murder. But that's only if premeditation was found. I mean, it sounds like it's kind of implicitly following, although it's not stated here, what the Fourth Circuit did in the Thompson case. But... I wouldn't, Your Honor, I wouldn't say. I think that this statement does not do the Thompson case, follow the Thompson case at all because if it's felony murder, intent's not required. Right, you're right. So I don't think that his very lengthy, I think his very lengthy discussion of intent is a big part of the reason that shows he wasn't going down the felony murder road. And then if logic requires that it be 33 and he discusses premeditation, albeit briefly, but he didn't have to bring that up at all, and he did, we think he made the finding. Now, if the court disagrees with that, we think that the proper remedy would be to remand the matter down to him, for him to make a more explicit finding regarding premeditation. Mr. Miller, a significant part of the defense appellant's argument here or position here is really one, and I'm not sure whether you would call it clear error or sufficiency, but in any event, they maintain that in accord with one piece of the, of Mr. Nawaz's testimony, that events unfolded too quickly, that factually there's not support for premeditation here. What would be your position with respect not to the legal question, or a legal question only in terms of what we're looking at is sufficiency. What does the record show that would support premeditation here? So first it shows, as Your Honor noted, that when the defendant entered the store, he gave Mr. Nawaz a bag to put the narcotics in and he told him, hurry up, otherwise I'll shoot you. That's a direct quote from Mr. Nawaz. So that's evidence that the defendant decided at the outset that if Mr. Nawaz did not follow his instructions, he would kill him. So that's evidence of premeditation long before the shooting takes place. Mr. Nawaz later testified at Appendix 153 that, quote, the defendant eventually put the firearm inside his pocket. After that, Mr. Nawaz took the defendant to the ground. Mr. Nawaz testified the defendant got free. And then I asked Mr. Nawaz, quote, after you took the defendant to the ground, what, if anything, was he able to do with his hands? The answer was, quote, the first thing, he just got the gun. So the defendant's now taking the time to take the gun that he put in his pocket and pull it back out. Mr. Nawaz then testified that the defendant aimed the gun and fired the gun. The time it takes to take the gun out of one's pocket, aim it, and fire it is clearly enough time for a brief moment of thought to occur. So there is. In fact, I'm assuming, given that recitation, your position is not that this is a sufficient brief moment that we had that provided or that provides the premeditation. It was more than that. We believe it's more than a brief moment. There was a conditional threat at the outset of the crime. That was followed by taking the gun out of the pocket, aiming the gun, and firing the gun. In addition to that, the place where he fired the gun was where the victim's vital organs were concentrated. But that doesn't go to premeditation, does it? I mean, a shot, and I'm recalling now, and Mr. Donahue will appreciate this, I'm going back to my Pennsylvania law, but it's not premeditation for which a shot to a vital organ or a vital part of the body is supported, but rather that it supports malice of forethought. So it is relevant to that. There are cases outside of Pennsylvania that holds that the location of the shooting is a factor. In premeditation. In premeditation, yes. And they're cited in our brief, Your Honor. I don't understand that because premeditation is a temporal concept. It's not how badly you want to hurt somebody. When was it determined? Let me back up. Did you argue that there was, before Judge Goldberg, that there was premeditation? Your Honor, I don't know if I explicitly made that argument or not. I couldn't find it at all. In reference to Murillo, whatever it is, on page 149, you said, I just brought that in because this is really not apposite to felony murder. It sounds like your basic argument was felony murder and the court wasn't buying it, or we're not buying it at this point. So we're off on. Premeditation, a determination that he planned to kill, that there was an act indicating that he clung to that plan and a sufficient lapse of time between the determination and the act. And you've agreed that that's the general test. When was there a finding of a determination that Mr. Stevens planned to kill as he went into that drugstore? So, one, Your Honor, well, the finding, we believe, can be inferred from Murillo. But I also believe, Your Honor, that. You're saying basically just by obliquely referring to Murillo somehow and then later saying it's intent, that intent includes premeditation. Maybe so, but it's inconclusive. When did you make an argument that there was a determination that he planned to kill at some point in time? I don't believe that I made that argument, but I believe Judge Goldberg made that finding. So, but if you didn't make that argument and the PSR suggested that the enhanced would be a 27, not a 33, why isn't that forfeited? So, the PSR, Your Honor, again, I objected to that and I. You objected to it on felony murder, but not on the fact that there was basically walking and saying, Your Honor, look, if you don't agree with felony murder, there was premeditation. And then there was an intent when he carried it out, when he shot him. And there was a sufficient lapse of time between the premeditation and the act. None of that was said. Your Honor, that's correct, but it was also certainly never the case that the government came in and said, Your Honor, we're not arguing premeditation here. No one could find premeditation here. And I believe that Judge Goldberg, during the sentencing hearing, clearly indicated that. But to conclude that there was first degree murder as an object, you have to fill in the findings for first degree murder. The termination, that was a plan, the carrying out of the plan, that's the intent, and a sufficient lapse of time between the two. I don't see it in this record. I believe that you can infer from the record that Judge Goldberg made the finding. And if the court disagrees, then it's, of course, possible to remand to Judge Goldberg to ask him to make a more explicit finding of whether or not premeditation occurred. But certainly the government did not waive the argument. And certainly that's the inference, as some of you have noted from the record, that Judge Goldberg must have made that conclusion. Just circling back to your point, Judge Smith, in terms of the evidence, so in addition to taking the time to pull it out and aim the gun, and in addition to the conditional threat, there is the fact that, and this is in the PSR and no one disputed this, the defendant's DNA was on a firearm magazine that was located at the scene. And the defendant clearly fired one shot, Judge Goldberg found it, that he intentionally fired it into the victim's chest. And it's undisputed that the defendant, after firing the first shot, aimed his gun at the victim's head before running away. And so it would be reasonable for a fact finder, in this case Judge Goldberg, to believe that the defendant intended to fire a second premeditated kill shot, but was not able to do so because he had no more ammunition. His magazine had fallen out of the gun. So we believe that it's far from clearly erroneous to conclude that there is premeditation here. Thank you, Mr. Miller. Thank you. We'll hear rebuttal from Mr. Donahue. Thank you. Your Honors, with respect to the district court's citation of Murillo, I would just refer the court to pages 181 and 182, and specifically the two other cases that Judge Goldberg cites in tandem with Murillo. There's one's called Curry, one's called Collier, from other circuits. And Judge Goldberg explains that he sees those cases as relevant, because in one, the shooting charge claimed to be an attempted murder came in a robbery, and the other came as a carjacking. He's making the point that just because a shooting comes in the course of an underlying felony, the underlying felony is not the, quote, unquote, object of the offense, as defense counsel had argued. So those two cases, Curry and Collier, have nothing to do with premeditation and underscore the different focus that the district court had. But we have objects here, plural, of two offenses, right? The object of completing a robbery or committing a robbery, and the object of committing a shooting or committing a murder, right? Yes. Okay. Just wanted to clarify that. But that wasn't the defense position below. And so that erroneous argument on the defense has to inform how we understand the district court's ruling alongside the government's. I don't understand that argument, because it is not the case, in my experience, that the findings, legal conclusions, evaluations of trial judges always track perfectly with the arguments made by counsel. And, I mean, in theory, I suppose Judge Goldberg could have said to government, do you have anything on premeditation? No, I don't. Okay. Well, then you forfeited that argument. A district judge can do that. A district judge controls the presentation of evidence to some degree and can flesh out the arguments. But it's also the case, is it not, that sometimes a defense counsel or prosecutor might not make an argument, but the district court, as the evidence unfolds, makes certain legal conclusions and findings of fact that don't track the arguments of counsel. Isn't that the way this works from time to time? Right. And you would expect, indeed, require the district court to state those findings for the record. In the Dowdell case, for example, the district court is very clear about what it is taking the government to argue or not. And this is the inverse of Dowdell. Yes. Your Honor, the record does make clear, in this case, that the court was tracking counsel's arguments. One indicator are those two cases at sites at page 181 and 182. And let me back up to more of a 10,000-foot view. The defense comes into this hearing with the position, Mr. Nawaz might have been the one who pulled the trigger, right? This all happened so quickly. There's no way. At worst, Stevens accidentally fired the gun. That's the defense position. And the defense also argued it was not intentional, which was part of the reason one would assume that the judge was talking about, no, I think it was intentional. Right. But that doesn't – the fact that the judge was responding to a defense argument of unintentionality with a finding of intentionality doesn't preclude the possibility or, indeed, the likelihood that the judge also found premeditation. It wouldn't preclude it, Your Honor, but in the context here, we've got the government saying it doesn't matter, but he did intentionally shoot Mr. Nawaz. The defense says, no, this was a scuffle. He was trying to get the gun away from Mr. Nawaz. The court says he intentionally shot Mr. Nawaz. So at that point, basically, the government's won, correct? Yes. It would seem like the government's won, but all that established was that the government— Second-degree murder. Exactly. Got it. Got it. Thank you very much, Mr. Donahue. We understand the arguments of both sides. We'll take the matter under advice.